IN THE UNITED STATES DISTRICT Court

FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. CR-02-048-E-BLW |
| | ) | |
| v. | ) | **MEMORANDUM DECISION** |
| | ) | **AND ORDER** |
| JUAN MANUEL MONTENEGRO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pursuant to *United States v. Booker*, 125 S. Ct. 738, 769 (2005) and *United States v. Ameline*, 409 F.3d 1073, 1084-85 (9th Cir. 2005) (en banc), the Ninth Circuit remanded this case to allow the Court to consider whether it would have imposed a materially different sentence had the sentencing guidelines been advisory rather than mandatory at the time of the original sentencing.  *See* Docket No. 65.  Defendant subsequently filed a Request for Resentencing Hearing (Docket No. 72) docketed as a Motion to Appear Telephonically for Resentencing.

For the reasons set forth below, the Court has determined that it would not have imposed a materially different sentence under advisory guidelines.  Thus, Defendant's original sentence stands, subject to appellate review based on the

**Memorandum Decision and Order - 1**

*Booker* reasonableness standard.  *See Ameline,* 409 F.3d at 1074-75; 1085.

## BACKGROUND

On November 8, 2002, the Court sentenced Defendant to a term of imprisonment of 87 months on Count 2 (Distribution of 50 Grams or More of Methamphetamine 21 U.S.C. § 841(a)(1)).[1]  *See* Judgment (Docket No. 38).  The Presentence Report (PSR) had recommended an offense level of 33 with a guideline range of 151-188 months reflecting an undisputed drug quantity, a 2-level enhancement under § 2D1.1(b)(1) for possessing firearms in connection with the offense, and a 3-level reduction for acceptance of responsibility.  PSR ¶¶ 48-56.  However, the Court granted the  Government's § 5K1.1 and § 3553(e) motion for a 5-level departure for substantial assistance and for relief from the mandatory minimum (Docket Nos. 32, 33) thereby reducing the offense level to 28 which yielded a guideline range of 87-108 months.[2]  The Court overruled Defendant's objection to the firearm enhancement and denied his request for a reduction in criminal history category and for a 2-level downward departure for stipulating to deportation.

---

[1] Defendant  pleaded guilty to Count Two of the Indictment pursuant to a Plea Agreement.

[2] The Court notes that the Government moved for a 5-level departure for substantial assistance despite the Plea Agreement provision for a 4-level departure.  Docket No. 22, p. 6, ¶ C.

**Memorandum Decision and Order - 2**

On May 16, 2003, Defendant filed a § 2255 motion, asserting a claim of ineffective assistance of counsel due to counsel's failure to file a notice of appeal (Docket Nos. 40 and 42) and subsequently moved to include a *Blakely* claim.[3]  *See* Docket No. 53.  The Court granted the Defendant's motion to reinstate his right to appeal, but denied his motion to amend his § 2255 motion on the grounds that he could raise the *Blakely* claim on appeal.  *See* Docket No. 57.

On September 16, 2004, Defendant filed a timely Notice of Appeal (Docket No. 59), although it is not apparent from the record what issues Defendant appealed.  Before Defendant's appellate brief was due, the Supreme Court decided *Booker*.  In *Booker*, the Supreme Court extended the rules of *Apprendi* and *Blakely* to the federal sentencing guidelines concluding that any fact underlying a sentence, other than a prior conviction, must be admitted by a Defendant or proven to a jury beyond a reasonable doubt.  To avoid the constitutional problem inherent in the mandatory sentencing scheme, *Booker* rendered the sentencing guidelines advisory by removing the statutory language making the guidelines mandatory.

Because the Ninth Circuit could not reliably determine from the record

---

[3]  *Blakely*, decided while the § 2255 proceeding was pending, clarified that the "statutory maximum" referred to in *Apprendi* is "the sentence a judge may impose *solely on the basis of facts reflected in the jury verdict or admitted by the defendant*."  *Blakely v. Washington*, 124 S.Ct. 2531, 2537 (2004) (emphasis in original).  *Apprendi* had held that any fact, other than a prior conviction, that increases a sentence beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt.  *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).

**Memorandum Decision and Order - 3**

whether the sentence imposed would have been materially different had the District Court known that the Guidelines were advisory, it remanded this case to this Court pursuant to *Ameline* to make that determination and resentence if it answered in the affirmative.  (Docket No. 65).

In accordance with the procedures set forth in *Ameline*, this Court provided Defendant with an opportunity to opt out of resentencing and sought briefs from counsel regarding whether or not the sentence should be materially different. In his brief, Defendant essentially reasserts the arguments made by counsel at sentencing and adds a *Blakely* argument.  Defendant contends that he should be re-sentenced because the firearm enhancement was based on judge-found facts in violation of *Blakely*; that it was clearly improbable that the firearms were possessed during commission of the offense; that the criminal history was overstated; and that he should have received a departure for agreeing to deportation.  *See* Def.'s Memo for Resent. Hrg. (Docket No. 71).

The Government filed a Response supportive of the Court's original findings and contending that the Government's substantial assistance motion in essence rendered the guidelines advisory in this case because the Court had the discretion to depart to either a greater or lesser extent than the requested five levels.  *See* Docket No. 73.

**Memorandum Decision and Order - 4**

## APPLICABLE LAW AND DISCUSSION

*Ameline* instructs that if a district Court judge determines that the sentence imposed would not have differed materially under an advisory guideline scheme, the judge "should place on the record a decision not to resentence, with an appropriate explanation." *Id.* at 1085.

In making its determination on remand, the Court has examined the Plea Agreement (Docket No. 22); Presentence Report, Addenda, and Recommendation prepared for the original sentencing; Government's Objections to Pre-sentence Investigation Report (Docket No. 27); Defendant's Objections to Pre-sentence Investigation Report (Docket No. 28); Defendant's Amended Objection to Pre-sentence Investigation Report and Request for Recalculation of Guideline Sentence (Docket No. 30); Defendant's Sentencing Recommendations (Docket Nos. 36 and 39); the transcript of the original sentencing hearing; the resentencing briefs of the parties; and *Booker* and *Ameline*.

While many Defendants have argued before this Court that the Guidelines should not be the starting point for determining a sentence, this Court has consistently adhered to the principle that the guidelines *are* the starting point, but that the Court should sentence outside the guidelines if a guideline sentence would

be unreasonable after considering the factors enumerated in 18 U.S.C. § 3553(a).[4]

This approach is consistent with the Ninth Circuit's view that it must first

determine if the district court has correctly interpreted and applied the guidelines

before reviewing a sentence for reasonableness.  *See United States v. Cantrell*, 433

F.3d 1269 (9th Cir. 2006); *United States v. Guerrero-Velasquez*, 434 F.3d 1193

(9th Cir. 2006).[5]

Accordingly, the Court will first revisit its prior holdings before addressing

the issue of whether it would impose a materially different sentence under an

advisory guideline scheme.

## 1.      Firearm Enhancement under USSG § 2D1.1(b)(1).

Defendant contends (1) that this Court erred in finding that he possessed

firearms during the drug trafficking offense in applying the enhancement pursuant

to § 2D1.1(b)(1), and (2) that the finding violated the rule of *Blakely*.

---

[4] The § 3553(a) factors may be summarized as:  nature and circumstances of the offense; history and characteristics of the defendant; need to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; need for adequate deterrence; need to protect the public; need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment; kinds of sentences available; kinds of sentences and sentencing range established by the Guidelines; Sentencing Commission policy statements; need to avoid sentencing disparities; and the need for restitution.

[5] The Court notes that the Government's Response indicated that a footnote in *Guerrero-Velasquez* stated that a sentence suggested by the guidelines is presumptively reasonable.  The Court further notes that subsequent to the filing of the Government's Response, the Ninth Circuit amended the opinion to delete that statement from the footnote.  *See United States v. Guerrero-Velasquez*, 434 F.3d 1193, 1195 n. 1 (9th Cir. 2006).

**Memorandum Decision and Order - 6**

At sentencing, the Court must, for any disputed portion of the PSR or other controverted matter, rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the Court will not consider the matter in sentencing. *See Ameline*, 409 F.3d at 1085 (citing Fed. R. Crim. P. 32(i)(3)(B)). The Government has the burden of proof regarding the offense level determination and any sentencing enhancements. *Id.* The Defendant, on the other hand, has the burden of proof regarding any downward departure. *Id.*

Section 2D1.1(b)(1) provides that "if a dangerous weapon was possessed, increase by two levels." The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons and the enhancement may be applied "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." *See* § 2D1.1(b)(1), comment. (n.3). In applying this enhancement, a district court "need not find a connection between the firearm and the offense. If it finds that the defendant possessed the weapon during the commission of the offense, the  enhancement is appropriate" even if he was not carrying the firearm. *Lopez-Sandoval*, 146 F.3d 712, 714-15 (9th Cir. 1998).

Defendant does not dispute that the shotgun, two rifles, and a pistol seized from his home at the time of his arrest on February 13, 2002 were his. Nor does he

**Memorandum Decision and Order - 7**

dispute the related factual statements in the PSR.  Rather, he disputes the

application of the enhancement based on those facts.  He contends that because the

firearms were not found until a month after the last drug transaction and there were

no drugs in the home at the time, the evidence is insufficient to support the

enhancement.

Defendant possessed the firearms in his residence outside of which some of

the drug transactions took place, but he went into his home each time to obtain and

cut the drugs.  *See* Sent. Tr. 29:11.  Therefore, to avoid a sentence enhancement

under § 2D1.1(b)(1), Defendant bore the burden of proving that it was clearly

improbable that he possessed the weapons in connection with his drug trafficking

offense.  *United States v. Restrepo,* 884 F.2d 1294, 1296 (9th Cir. 1989).

The Court spent substantial time during the sentencing hearing addressing

the firearms issue.  After hearing the arguments of the Defendant, the Court found

the following:

> Here, the firearms were seized at the Defendant's house
> in February when he was arrested. They included a
> shotgun, two hunting rifles, and a pistol. I am not certain
> whether or not any of the weapons were actually loaded,
> but there was ammunition for the weapons in the very
> same area.
>
> Moreover, in January and December, the evidence is
> clear, and I think essentially unrebutted, that the
> Defendant concluded the drug transactions out of his

**Memorandum Decision and Order - 8**

home. I believe that the informants remained outside the home. It appeared, because they wanted to stay within visible sight of those who were kind of supervising or monitoring the drug transaction, but the Defendant went into his home to obtain the drugs and to cut the drugs.

To me that is sufficient for the Court to conclude by a preponderance of the evidence, and I think that's the applicable standard because a two-level adjustment does not make the type of draconian or substantial increase in the sentence so as to need a higher finding under the Ninth Circuit authority, the Court can clearly conclude by that standard that the weapon was present as part of the drug transaction.

Then the only question is whether the Defendant has met the burden of persuading the Court that it is clearly improbable that the weapon was connected with the offense.  The only thing I've heard is defense counsel's mistaken representation that the transactions actually took place somewhere else, that was a mistake because the reference in the grand jury transcript was not to the December and January transactions, but to an earlier transaction before the Defendant's home in fact was completed and was still under construction.

Therefore, the Court will find that the weapon was connected with the offense. *I do find it important that the pistol is typically not a sporting gun, and there is no evidence that it was used for that purpose*.

On balance, and based upon all of those considerations, the Court finds that the firearm enhancement does apply based upon a finding that the weapons were present during the offense, and the Defendant has not shown that it is clearly improbable that the firearms were used in connection with the offense.

**Memorandum Decision and Order - 9**

Sent. Hrg. Tr. 28:11- 30:19.  (Emphasis added.)

At sentencing,  Defendant did not present testimony, nor did he argue, that the firearms were not present in the home on any of the occasions when drug transactions occurred in front of the home.  He did not present testimony that the pistol was used for sporting purposes.   Even if the shotgun and two hunting rifles were used solely for hunting, the enhancement is justified based on the pistol alone.[6]  Defendant failed to meet his burden of showing that it was clearly improbable that the firearms were possessed in connection with drug trafficking activity.

Defendant further asserts that the imposition of the two level enhancement is a violation of the rule of *Blakely*.  However, *Booker*, not *Blakely*, is the controlling authority here.  Indeed, the Ninth Circuit specifically remanded this case for consideration of resentencing in light of *Booker*.[7]

## 2.     Inadequacy of Criminal History Level USSG § 4A1.3.

The Presentence Report calculated Defendant's Criminal History Category

---

[6]  The Court notes that while defense counsel proffered at the sentencing hearing that Defendant was prepared to testify that the firearms were unloaded and in his closet, he did not proffer that Defendant would testify that they were used for hunting.  Sent. Tr. 10:10-14.

[7]  Arguably, had his appeal been heard post-*Blakely* but pre-*Booker*, the case would have been remanded  in light of *Blakely*.  Shortly after *Blakely* was decided, the Ninth Circuit held that the rule of *Blakely* was applicable to the federal sentencing guidelines.  *United States v. Ameline [Ameline I]*, 376 F.3d 967, 980 (9th Cir. 2004).

**Memorandum Decision and Order - 10**

as a II based on two driving under the influence convictions. *See* PSR, ¶¶ 58 and

59. Defendant argued that because his convictions were 6 years old and not drug

related, they did not increase the likelihood of his committing another drug offense

and substantially exaggerated his past criminal history in relation to his charge in

this case. *See* USSG § 4A1.3(b)(1). Consequently, Defendant argued that the

Court should consider a downward departure to criminal history category I. (Sent.

Hrg. Tr. 20:9-25, 21:1-3).

In the sentencing hearing, the Court rejected Defendant's argument that his

criminal history was over-represented stating:

> With regard to the arguments concerning whether Criminal
> History Category II over represents the Defendant's criminal
> history, I am going to reject that argument. If I were to grant
> that reduction in the Criminal History Category, it would place
> the Defendant in an Offense Level of 1, which would be the
> same offense level that a person would have if they had an
> absolute blank criminal record, with no charges of any kind. I
> think that would grossly understate the Defendant's Criminal
> History Category, since he has two prior DUI convictions.
>
> I do not agree with counsel's assessment that people typically in
> a Criminal History Category II have drug transactions involved.
> I think it is more common when there are drug transactions
> involved. For a number of reasons, they end up in Categories
> III, IV and above. So I am going to reject that objection to the
> report.

Sent. Hrg. Tr. 32:18-25, 33:1-10.

The Introductory Commentary to Chapter 4, Part A, of the Sentencing

**Memorandum Decision and Order - 11**

Guidelines states in part:

> A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment.  General deterrence of criminal conduct dictates that a clear message be sent to society that repeated criminal behavior will aggravate the need for punishment with each recurrence.  To protect the public from further crimes of the particular defendant, the likelihood of recidivism and future criminal behavior must be considered.  Repeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation.

The guidelines provide for a downward departure when the criminal history category "substantially" over-represents the seriousness of the criminal history or the likelihood of recidivism.  § 4A1.3(b)(1).  The example in the Commentary indicates that such a departure may be warranted where a defendant has two "minor misdemeanor convictions" almost ten years old and no other evidence of prior criminal behavior in the intervening period.  *Id.*, comment, (n. 3).

Here, the convictions for driving under the influence were not what the Court considers "minor misdemeanor convictions" as they involved alcohol levels of .135 and .188.  Nor were they almost ten years old as in the example.  Furthermore, the Court does not believe that the criminal history category "substantially over-represents" the criminal history.  The criminal history category was properly calculated, and the Court finds nothing in § 3553(a) to justify

disturbing its prior finding.

### 3.   Defendant's Request for Two-Level Reduction for Removal/Agreement to Deportation.

Defendant acknowledges that the Government did not agree to a two-level reduction for stipulation to deportation in the Plea Agreement.  Furthermore, the Government specifically opposed such a departure at the sentencing hearing.  Sent. Tr. 27.  The Court recognizes that the Government's opposition does not preclude a departure.  *See United States v. Rodriguez-Lopez*, 198 F.3d 773, 775-76 (9th Cir. 1999).

Defendant asserts that as a lawful permanent resident of the United States, he would at least be entitled to request a hearing and apply for cancellation of removal.  He recognizes, though, that his case is not likely to be entitled to review.  Nevertheless, he contends that because the Ninth Circuit has found that certain drug possession offenses are not aggravated felonies for purposes of removal, he would have an arguable basis for challenging removal.  *See Cazarez-Gutierrez v. Ashcroft*, 382 F.3d 905 (9th Cir. 2004).

The Court is not persuaded.  Rather, it adheres to its views expressed at the sentencing hearing that Defendant will almost certainly be deported following his release and that the value to the Government of an agreement to deportation after a lengthy sentence is of little value.  Sent. Tr. 33-35.

**Memorandum Decision and Order - 13**

Defendant can point to no authority that a drug trafficking crime has been held not to be an aggravated felony for removal purposes. The fact that a simple possession case that would be a misdemeanor under federal law although a felony under state law was not considered to be an aggravated felony for immigration purposes in *Cazarez-Gutierrez* and the cases cited therein does not persuade the Court that Defendant would have a defense to removal. Indeed, *Cazarez-Gutierrez* specifically held that a state offense is an aggravated felony for immigration purposes "only if it would be punishable as a felony under federal drug laws *or the crime contains a trafficking element*." *Id.* at 912. Furthermore, Defendant has offered no facts taking this case out of the heartland or justification under § 3553(a) to persuade the Court to change its prior ruling.

## MOTION TO APPEAR TELEPHONICALLY FOR RE-SENTENCING

Defendant requests that he not be required to appear in person for re-sentencing because he would lose his slot on the waiting list for employment, he would lose his residence in the quiet dorm, and would disrupt his educational program. Given the Court's decision on re-sentencing, this motion is moot. (Docket No. 72).

## CONCLUSION

Defendant has not identified any § 3553(a) factors that would suggest a

**Memorandum Decision and Order - 14**

lower sentence is warranted.  Nor has the Court.  Accordingly, the Court finds that its sentence would not be materially different under the presently advisory guidelines.  Thus, Defendant's original sentence stands and a re-sentencing hearing is not necessary.

### ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the sentence imposed on November 8, 2002 (Docket No. 38) would not have been materially different under advisory guidelines.  Therefore, the original sentence stands, subject to appellate review based on the reasonableness standard established in *Booker.*

IT IS FURTHER HEREBY ORDERED that Defendant's Request for Resentencing Hearing docketed as Motion to Appear Telephonically for Resentencing (Docket No. 72) is MOOT.

DATED:  **March 22, 2006**

B. LYNN WINMILL
Chief Judge
United States District Court